1  STEPHENSON, ACQUISTO & COLMAN
2  JOY Y. STEPHENSON, ESQ.            (SBN 113755)
   BARRY SULLIVAN, ESQ.              (SBN 136571)
3  KARLENE J. ROGERS-ABERMAN, ESQ. (SBN 237883 )
   303 N. Glenoaks Blvd., Suite 700
4  Burbank, CA 91502
5
   Telephone:  (818) 559-4477
6  Facsimile:   (818) 559-5484
7
   Attorneys for Plaintiff
8  CHILDREN'S HOSPITAL AND RESEARCH CENTER
   AT OAKLAND
9
10            **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12

13  CHILDREN'S HOSPITAL AND           Case No.:    C07-06069 SC
    RESEARCH CENTER AT OAKLAND,
14  a California nonprofit corporation,   PLAINTIFF'S MEMORANDUM OF
                                          LAW IN SUPPORT OF ITS
15              Plaintiff,                *OPPOSITION* TO DEFENDANT'S
                                          MOTION FOR LEAVE TO AMEND
16         vs.                            ANSWER TO ASSERT
                                          COUNTERCLAIM
17
18  HEALTH PLAN OF NEVADA, INC., a      Date: July 25, 2008
    California for profit corporation; and  Time: 10:00 a.m.
19  DOES 1 THROUGH 25, INCLUSIVE,        Ctrm: 1
20              Defendants.
21
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

4226                                    - 1 -    PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                                MOTION FOR LEAVE TO AMEND ANSWER TO
                                                ASSERT COUNTERCLAIM

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS………………………………………………………..-i-

TABLE OF AUTHORITIES………………………………………………..-ii-

MEMORANDUM OF POINTS AND AUTHORITIES……………………………-2-

I.  INTRODUCTION AND SUMMARY OF ARGUMENT…………………… -2-

II. STATEMENT OF RELEVANT FACTS……………………………………-3-

III. HPN'S MOTION MUST BE DENIED ON THE GROUNDS
     OF UNDUE PREJUDICE TO CHILDREN'S HOSPITAL…………… -4-

   A.    HPN Knew Or Should Have Known of the Facts Raised By The
         Proposed Amendment At The Time It Filed Its
         Answer………………………………………................………-4-

IV. HPN'S MOTION WAS FILED IN BAD FAITH AND SHOULD
    BE DENIED………………………………………………................ -6-

  A.   HPN Seeks Leave To Amend In the Face of
       Impending Summary Judgment…………………………………….-6-

  B.   The $1447 *Per Diem* Rate Sought To Be Paid by HPN Is A
       Backdoor Attempt to Ascertain Children's Hospitals
       Confidential Information…………………..………..…..……………-8-

V.  THE AMENDMENT WOULD BE FUTILE……………..….................-10-

VI. CONCLUSION…………………………………………..…...............-11-

1

## TABLE OF AUTHORITIES

2

Page

3

4

## CASES

5
AmerisourceBergen Corporation v. Dialysist West, Inc., 465 F.3d 946, 953

6
(9th Cir.2006)…………………………………………………………...-4-

7
Eminence Capital, LLC v. Aspeon, Inc. 316 F.3d 1048, 1052 (9th Cir.2003)…….-4-

8
Madeja v. Olympic Packers, 310 F.3d, 628, 636 (9th Cir.2002)……………......-4-

9

10
Miller v. Rykoff-Sexton, Inc, 845 F.2d 209, 214 (9th Cir.1988)………………...-10-

11
Saul v. United States, 928 F.2d 829, 843 (9th Cir.1991)…………………………...-10-

12
Union Pacific R.R. Co. v. Coast Packing Co., 236 F. Supp.2d 1130

13
(C.Dist.2002)……………………………………………………………………..-6-

14
Yakima Indian Nation v. Wash. Dep't of Revenue, 176 F.3d 1241, 1246

15
(9$^{th}$Cir.1999)……………………………………………………………………...-4-

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## I.

4

## INTRODUCTION AND SUMMARY OF ARGUMENT

5

6     Plaintiff Children's Hospital and Research Center at Oakland

7   ("Children's Hospital") hereby opposes defendant Health Plan of Nevada's

8   ("HPN") motion for leave to amend its answer to assert a counterclaim.  The

9   proposed amendment not only unduly prejudicial to Children's Hospital, but has

10  also been made in bad faith, and will ultimately be futile.

11

12    Specifically, HPN seeks to add a counterclaim on the basis of

13  information it claims it only learned about over the course of discovery in this case.

14  This is a blatant mischaracterization of the facts.  In reality, the letters of

15  agreement forming the basis of the proposed counterclaim were documents that

16  were at all times in the possession of HPN.  Indeed, the documents were provided

17  *by* HPN *to* Children's Hospital as part of HPN's initial disclosures.  Clearly, HPN

18  had ample time to assert any relevant counterclaims at the time that it filed its

19  answer over 6 months ago.  To permit it to do so now would delay the progression

20  of this case, create a need for additional and unnecessary discovery, and would in

21  any case be futile, as the documents do not in anyway support HPN's assertions of

22  a claimed overpayment.  In fact, HPN's motion to amend is being made in bad

23  faith because it represents a backdoor attempt to force Children's Hospital to

24  disclose its highly confidential Medi-Cal reimbursement rates, and further, is a

25  transparent effort to thwart an anticipated motion for summary judgment from

26  Children's Hospital, based on irrefutable evidence of HPN's liability on the claim

27  at issue.

28

4226                                    - 2 -     PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                                  MOTION FOR LEAVE TO AMEND ANSWER TO
                                                  ASSERT COUNTERCLAIM

1    The motion for leave to amend should and must be denied.

2

3                                    **II.**

4                    **STATEMENT OF RELEVANT FACTS**

5

6            In 2006, Children's Hospital rendered medical care to a Medicaid

7    eligible member enrolled in HPN's health plan.  In connection with the treatment

8    provided, the parties entered into a letter of agreement ("LOA No. 1") whereby

9    payment was to be made at a rate of "one-hundred percent (100%) of the

10   California Medi-Cal Contracted Maximum Allowable Reimbursement....".  On or

11   about the same date, in connection with medical care rendered to a different

12   patient, the parties entered into a second letter of agreement ("LOA No. 2") which

13   was identical in every way to LOA No. 1.

14

15           Children's Hospital notified HPN in advance that its interpretation of

16   the language in both LOA No. 1 and LOA No.2 was that Children's Hospital had

17   an expectation of payment at a rate of 45% of its total allowable billed charges,

18   which constituted the Medi-Cal maximum allowable reimbursement rate otherwise

19   known as the Medi-Cal "Interim Rate."  HPN never disputed Children's Hospital's

20   interpretation, and in fact, subsequently paid LOA No. 2 as mutually agreed upon

21   by the parties.  However, HPN significantly underpaid LOA No. 1, prompting

22   Children's Hospital to institute the present action, which was removed by HPN to

23   this Court on diversity grounds.  Now more than six months after filing its answer,

24   HPN seeks leave to amend to assert a counterclaim based on a claimed

25   overpayment to Children's Hospital.  This motion is strenuously opposed by

26   Children's Hospital for the reasons set forth below.

27

28   ///

---

4226                          - 3 -    PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                        MOTION FOR LEAVE TO AMEND ANSWER TO
                                        ASSERT COUNTERCLAIM

### III.

### HPN'S MOTION MUST BE DENIED ON THE GROUNDS OF UNDUE PREJUDICE TO CHILDREN'S HOSPITAL

**A.   HPN Knew Or Should Have Known of the Facts Raised By The Proposed Amendment At The Time It Filed Its Answer**

The liberal policy in favor of amendments is subject to limitations. After the defendant files a responsive pleading, leave to amend is ***not*** appropriate if the "'amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.'" Madeja v. Olympic Packers, 310 F.3d 628, 636 (9th Cir.2002) (quoting Yakima Indian Nation v. Wash. Dep't of Revenue, 176 F.3d 1241, 1246 (9th Cir.1999)). *See also*, Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003), ("Leave to amend is not appropriate when it would result in prejudice to the opposing party.") Additionally, a motion to amend may be denied when the moving party "knew or should have known of the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corporation v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir.2006).  Thus, this Court has ample discretion to deny a motion to amend when, as in this case, the circumstances so require.

Here, HPN's motion to amend was not made with reasonable diligence; HPN clearly knew or should have known of the facts and theories raised by its proposed amendment at the time it filed its answer.

Children's Hospital filed its complaint on October 10, 2007.  The complaint described with specificity the contents of LOA No. 1 which formed the basis of its claim for breach of written contract, and included an allegation as to the

1  expected payment under LOA No. 1.

2

3          In November, HPN removed the action to federal court on diversity

4  grounds, then filed an answer dated December 5, 2007.

5

6          Pursuant to the parties' Joint Case Management Statement, Children's

7  Hospital and HPN both agreed that initial disclosures were to be made on or before

8  February 7, 2008.[1] On February 8, 2008, HPN filed Initial Disclosures less than

9  two pages in length, and indicated in a footnote that actual documents would be

10 produced upon execution of a mutually agreeable confidentiality agreement.  The

11 clear implication of HPN's footnoted statement was that HPN was already in

12 possession of the documents it intended to provide, but would not turn them over

13 to Children's Hospital until such time as appropriate protections regarding

14 disclosure were in place.

15

16         Following the parties' execution of the confidentiality agreement,

17 HPN filed a "first supplement" to its initial disclosures on May 22, 2008.

18 Significantly, HPN's supplemental disclosures contained *the very documents* that

19 it now misleadingly claims it "learned of…over the course of discovery in this

20 case." *See* HPN Motion, p.5.  As demonstrated above, HPN was fully aware of the

21 existence of these documents since *at least* February 8, 2008, and perhaps as early

22 as the time it filed its answer on December 5, 2008.  For HPN to claim otherwise is

23 purely disingenuous and demonstrates bad faith on HPN's part.

24

25         Permitting the amendment at this stage of the proceedings, more than

26

27 _____
   [1] Children's Hospital respectfully requests that the court take judicial notice of the parties' Joint
28 Case Management Statement filed on or about February 8, 2008.

_____

4226                              - 5 -    PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                           MOTION FOR LEAVE TO AMEND ANSWER TO
                                           ASSERT COUNTERCLAIM

1   six months after HPN's answer was filed, when it was at all times in possession of

2   the information forming the basis of its counterclaim, would be prejudicial to

3   Children's Hospital because as described more fully *infra*, Children's Hospital

4   anticipates filing a motion for summary judgment based on the irrefutable evidence

5   of HPN's liability in this case.  Permitting the amendment would delay the

6   progression of the case and result in additional burdensome discovery in

7   connection with HPN's trumped up allegations as to how the LOA,

8   notwithstanding clear evidence to the contrary, should be interpreted.

9

10                                    **IV.**

11   **HPN'S MOTION WAS FILED IN BAD FAITH AND SHOULD BE DENIED**

12

13   **A.    HPN Seeks Leave To Amend In the Face of Impending Summary**

14          **Judgment**

15

16          It is readily obvious that the only reason behind HPN's request for

17   leave to amend to assert a counterclaim is the fact that during the mediation of this

18   case, HPN realized that the documents that *it itself* provided actually *established*

19   that HPN was liable to Children's Hospital for the amounts demanded in the

20   complaint.  Recognizing that it was faced with summary judgment, HPN

21   manufactured a false basis for asserting a counterclaim on the wholly

22   unsubstantiated grounds of a claimed "overpayment."  See HPN Motion, p.2.  This

23   is a transparent attempt to mislead the Court, and creates issues where none exist.

24   *See* Union Pacific R.R. Co. v. Coast Packing Co., 236 F.Supp.2d 1130 (C.Dist.

25   2002), (finding that bad faith existed in connection with a plaintiff's motion for

26   leave to amend its complaint when faced with a dispositive motion).

27

28          Specifically, as already stated in the complaint and acknowledged in

---

4226

- 6 -

PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
MOTION FOR LEAVE TO AMEND ANSWER TO
ASSERT COUNTERCLAIM

1  HPN's motion, LOA No. 1 provided that HPN would be required to pay "one-
2  hundred percent (100%) of the California Medi-Cal Contracted Maximum
3  Allowable Reimbursement...." See Exhibit "1" to the Declaration of Karlene J.
4  Rogers-Aberman attached hereto (hereinafter, "Aberman Decl."). In its complaint,
5  Children's Hospital asserted that the intent of that language, as understood by both
6  parties, was that HPN was to pay the Medi-Cal "Interim" Rate, which was 45% of
7  Children's Hospital's total allowable billed charges.

8

9        As it turns out, Children's Hospital's contentions were substantiated
10  by HPN itself, when as part of its initial disclosures, HPN provided another letter
11  of agreement between the parties—LOA No. 2—executed on the same day, which
12  was *identical* to LOA No. 1. A copy of LOA No. 2 is annexed to the Aberman
13  Decl. as Exh. "2". Under the terms of LOA No. 2, which again, contained the very
14  terms appearing in LOA No. 1, HPN paid for the services provided to the patient at
15  issue at the Medi-Cal "Interim" rate—*i.e.*, 45% of billed charges. Importantly, on
16  July 20, 2006, correspondence was sent to HPN by Children's Hospital in
17  connection with LOA No. 2 indicating that Children's Hospital's expectation of
18  payment was the Interim rate, which was the "maximum allowable
19  reimbursement" and that this was the basis used for payment expectations for out-
20  of-state Medicaid plans like HPN. *See* Aberman Decl., Ex. "3".

21

22        HPN was therefore put on notice well before it issued payment under
23  LOA No.2 as to what the expected reimbursement was to be. Evidently accepting
24  and agreeing with Children's Hospital's letter, HPN then made payment
25  approximately 11 days later on July 31, 2006 at the Interim rate—*i.e.*, 45% of
26  Children's Hospital's total allowable billed charges.

27

28        Further corroborating Children's Hospital's contention that letters of

4226                                    - 7 -    PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                                 MOTION FOR LEAVE TO AMEND ANSWER TO
                                                 ASSERT COUNTERCLAIM

1  agreement between the parties evidenced an expectation of payment in the
2  neighborhood of 50% of its total allowable billed charges were ***three other*** letters
3  of agreement, also provided by HPN in its initial disclosures.  See Aberman Decl.,
4  Ex. "4").  ***Without exception***, these three letters of agreement all provided that
5  payment was to be paid at either 50% or 70% of Children's Hospital's total
6  allowable billed charges.  Taken together, these agreements portray a consistent
7  expectation of payment at a rate substantially above what HPN is now arguing
8  should be paid on the claim at issue.  Faced with this knowledge, and facing certain
9  summary judgment based on these clear examples of past practices on HPN's part
10 that supported Children's Hospital's claim, HPN seeks to muddy the issues.  It now
11 suggests a wholly different interpretation of the contract based on a document that
12 in no way supports its position, and is clearly geared towards ascertaining
13 information which it is not entitled to receive.

14

15 **B.    The $1447 *Per Diem* Rate Sought To Be Paid by HPN Is A Backdoor**
16 **Attempt to Ascertain Children's Hospitals Confidential Information**

17

18         Notwithstanding all the evidence to the contrary, HPN asserts without
19 basis that payment at the "Interim" rate was not the intent of the LOA's and that
20 some other rate applied.  Thus, HPN insisted and continues to insist that Children's
21 Hospital should disclose its highly confidential rate agreement with California
22 Medi-Cal.  HPN desires to use these confidential rates as a basis for determining
23 the amount HPN will pay to Children's Hospital on the claim at issue.  Children's
24 Hospital correctly refused, and continues to refuse to disclose this information, as
25 it is ***strictly prohibited*** from doing so based on its agreement with California Medi-
26 Cal.  Surely, it would have made little sense for Children's Hospital to enter into an
27 agreement with HPN that would require it to be reimbursed at rates that it was
28 expressly barred from disclosing.  Moreover, it is, and has always been Children's

1   Hospital's contention that the expected reimbursement was the Medi-Cal "Interim"

2   rate, and that HPN understood this to be the case.

3

4           Indeed, the $1447 *per diem* rate that HPN contends should be the

5   applicable rate of payment to Children's Hospital under LOA Nos. 1 and 2 is based

6   ***purely*** on conjecture and surmise.  HPN is wholly unable to explain ***why*** this rate

7   should apply.  It submits a single letter from January ***2008*** (all of the other letters

8   of agreement are from 2004 and 2006), on a patient not at issue in this case, and

9   argues, based on ***its*** own revisionist interpretation of the expected reimbursement

10  rate, that the letter "indicates" that the applicable rate is $1447/day.  Nowhere in

11  that letter is it stated that the $1447/day rate is the "California Medi-Cal Contracted

12  Maximum Allowable Reimbursement Rate."  Indeed, the only reference to Medi-

13  Cal in that letter is made in connection with Children's Hospital's suggestion of an

14  alternative rate of payment of 45% of total allowable charges—*i.e.*, the Medi-Cal

15  Interim rate.  Thus, the January letter is actually ***consistent*** with Children's

16  Hospital's interpretation of LOA Nos. 1 and 2, because it acknowledges that the

17  anticipated ***Medi-Cal*** maximum reimbursement rate is, in fact, the Interim rate of

18  45% of allowable billed charges.

19

20          It is no mistake that the LOA's seek the "maximum" allowable rate.

21  Here, HPN is attempting to make the barest *minimum* payment possible, based on

22  information contained in a letter that has no relation to the claim at issue.  The fact

23  is, HPN has no basis upon which to conclude that the $1447 *per diem* rate is, in

24  fact, Children's Hospital's confidential Medi-Cal rate, and thus is using this motion

25  as a backdoor route to pressure Children's Hospital to release that information.

26  This is improper, particularly where Children's Hospital has told HPN *ad*

27  *nauseum*, that it is absolutely barred from disclosing that information to HPN.

28  Such bad faith tactics should not be countenanced by this Court.

4226                          - 9 -    PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                        MOTION FOR LEAVE TO AMEND ANSWER TO
                                        ASSERT COUNTERCLAIM

1

## V.

## THE AMENDMENT WOULD BE FUTILE

3

4    As described above, because the documents relied upon by HPN to

5  support its proposed counterclaim do not in any way support its claim of

6  overpayment to Children's Hospital, the requested amendment would be futile.

7  The documents demonstrate that the parties had a mutual agreement regarding the

8  expectation of payment under the letters of agreement, and evidence of HPN's past

9  practice in connection with other letters of agreement show that they were paid in

10  accordance with Children's Hospital's interpretation.  Thus, for HPN to now claim,

11  some two years later, that it overpaid Children's Hospital is not only disingenuous,

12  but demonstrably lacks merit.  "A district court does not err in denying leave to

13  amend where the amendment would be futile ... or would be subject to dismissal."

14  Saul v. United States, 928 F.2d 829, 843 (9th Cir.1991) (citation omitted); *see also*

15  Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir.1988) ("A motion for

16  leave to amend may be denied if it appears to be futile or legally insufficient.").

17  The motion for leave to amend must be denied.

18

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

---

4226                              - 10 -    PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
                                           MOTION FOR LEAVE TO AMEND ANSWER TO
                                           ASSERT COUNTERCLAIM

# VI.

## **CONCLUSION**

For all the foregoing reasons, Health Plan of Nevada's motion to amend its answer to add a counterclaim must be denied

Dated: 3 July 2008

STEPHENSON, ACQUISTO & COLMAN

KARLENE J. ROGERS-ABERMAN
Attorneys for
CHILDREN'S HOSPITAL AND
RESEARCH CENTER AT OAKLAND

4226
- 11 -
PLAINTIFF'S *OPPOSITION* TO DEFENDANT'S
MOTION FOR LEAVE TO AMEND ANSWER TO
ASSERT COUNTERCLAIM

1

2

## PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

    I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 303 North Glenoaks Boulevard, Suite 700, Burbank, California 91502-3226.

5

6

7

8

    On **July 3, 2008,** I served the foregoing document(s) described as **PLAINTIFF'S MEMORANDUM OF LAW   IN SUPPORT OF ITS** *OPPOSITION* **TO DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT COUNTERCLAIM** by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

9

10

11

12

CHARLES I. EISNER, ESQ.
JASON O. BALOGH, ESQ.
BOORNAZIAN, JENSEN &GARTHE
555 12TH Street, Suite 1800
Oakland, California 94604-2925

13

14

15

16

ANDREW WONG, ESQ.
JONES VARGAS
3773 Howard Hughes Parkway
3rd Floor South
Las Vegas, Nevada  89169

17

18

19

20

21

22

[XX]  BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Burbank, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. [C.C.P. 1013a(3); F.R.C.P. 5(b)]

23

24

[XX]  <u>Federal:</u>  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

25

26

27

28

Executed on **July 3, 2008,** at Burbank, California.

_____
ANGELA DEMERS

**PROOF OF SERVICE**