United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHILDREN'S HOSPITAL AND RESEARCH CENTER AT OAKLAND,<br><br>        Plaintiff,<br><br>    v.<br><br>HEALTH PLAN OF NEVADA, INC.; And DOES 1 THROUGH 25, INCLUSIVE,<br><br>        Defendants. | No. 07-6069 SC<br><br>ORDER GRANTING MOTION FOR LEAVE TO AMEND <u>ANSWER</u> |

## I. **INTRODUCTION**

The Children's Hospital and Research Center at Oakland ("Plaintiff" or "the Hospital") brought this suit in the Alameda County Superior Court in October 2007, alleging that Defendant Health Plan of Nevada ("Defendant" or "HPN") failed to pay the contractually required sum for medical services provided to one of HPN's members. <u>See</u> Notice of Removal, Docket No. 1, Ex. A ("Compl."). The Hospital is a California corporation and HPN is a Nevada corporation. HPN invoked the Court's diversity jurisdiction and removed the action from the Superior Court on November 5, 2007. <u>See</u> Notice of Removal. HPN then filed its Answer on December 5, 2007. <u>See</u> Docket No. 3.

Before the Court is HPN's Motion for Leave to Amend Answer to Assert Counterclaim. Docket No. 21. The Hospital filed an

1  Opposition and HPN filed a Reply.  Docket Nos. 29, 31.  Having
2  considered the parties' arguments in full, the Court hereby GRANTS
3  HPN's motion.

## II.  **BACKGROUND**

Beginning in May 2006, the Hospital rendered medical care to a Medicaid-eligible patient ("Patient 1") who was enrolled in HPN's health plan.  Pursuant to a Letter of Agreement between the parties, HPN was to pay the Hospital as follows:

> For Medically Necessary Covered Services rendered by PROVIDER in association with the above reference number, COMPANY shall reimburse PROVIDER one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate less applicable copayments, coinsurance, and/or deductibles.

Milone Decl. Ex. A ("LoA 1").[1]  At about the same time, the Hospital provided care to another HPN member ("Patient 2"), under nearly identical terms in a second Letter of Agreement:

> For Medically Necessary Covered Services rendered by PROVIDER, COMPANY shall reimburse PROVIDER one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate less applicable copayments, coinsurance, and/or deductibles.

Id. Ex. B ("LoA 2").

According to Plaintiff, the parties understood at the time they entered the above agreements that "one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate" was 45% of the Hospital's normal billing rate

---

[1] Matthew T. Milone, counsel for HPN, submitted a declaration in support of the motion for leave to amend.  Docket No. 23.

2

for any given service, or a 55% discount. See Compl. ¶ 8; Opp'n at 7. Plaintiff refers to this as the "Medi-Cal Interim Rate." Opp'n at 7.

Patient 1 received care from the Hospital between May 1, 2006, and September 1, 2006, incurring medically necessary expenses in the amount of $2,008,550.40. Compl. ¶ 12. The Hospital submitted a bill to HPN for these services totaling $903,847.68, reflecting the 55% discount off the interim rate. Id. ¶¶ 12-13. HPN paid the Hospital $341,325.00 for services provided to Patient 1. The $562,522.68 remaining from the Hospital's bill to HPN is the subject of the Complaint.

In its Answer, HPN admitted only that it "paid claims in full" to the Hospital. Answer ¶ 14. At that time, HPN asserted 16 affirmative defenses, but did not bring a counterclaim.

HPN now seeks leave to amend the Answer in order to assert counterclaims. During the course of discovery, HPN claims it obtained information demonstrating that it overpaid for the services provided to Patient 1 and Patient 2 in a total amount of $215,491.09. Mot. at 2-3. Specifically, HPN refers to a January 2008 letter from the Hospital to HPN regarding a third patient, in which the Hospital states, "Please note that patient stayed in the hospital for 13 days and should have been $1,447/per diem x 13days [sic] = $18,811.00 total payment, or considered at our medi-cal rate of 45% allowable charges." See Milone Decl. Ex. C. HPN infers from this letter that it should not have been required to pay more than $1,447.00 per day for the care of Patient 1 and Patient 2.

3

### III. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure establish a very liberal standard for allowing amendments to pleadings. In this case, as more than 20 days have passed since HPN filed its Answer, Rule 15(a)(2) governs. Under that provision, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Where a party seeks to add a counterclaim omitted from its original answer, the same standard applies. "The court may permit a party to amend a pleading to add a counterclaim if it was omitted through oversight, inadvertence, or excusable neglect or if justice so requires." Fed. R. Civ. P. 13(f); see also <u>Hip Hop Beverage Corp. v. Ric Representacoes Importacao E Comercio, Ltd.</u>, 220 F.R.D. 614, 620 (C.D. Cal. 2003) ("courts presented with motions for leave to amend a pleading to add an omitted counterclaim generally adhere[] to the liberal amendment policy of Rule 15 in deciding whether to grant the requested leave." (internal quotation marks omitted)).

The liberal stance towards amendments is not without some limitations, however. In deciding whether to grant leave to amend, the Court should consider factors including prejudice to the opposing party, bad faith of the moving party, futility of the amendment, and undue delay. See <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Prejudice to the opposing party is the most important of these factors. <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice or a "strong showing" of any of the remaining factors, there is a presumption

4

in favor of allowing amendment.  Id.

### IV. DISCUSSION

The Hospital has not demonstrated any compelling reason to deny leave to amend in this instance.  First, the Court fails to see how the Hospital would be prejudiced by amendment.  The Hospital claims that allowing the amendment will "result in additional burdensome discovery."  Opp'n at 6.  There is no basis for this assertion.  In its Answer, HPN denied all of the material allegations of the Complaint relevant to the amount due or the interpretation of LoA 1.  Compare Compl. ¶¶ 8, 12-15, with Answer ¶¶ 8, 12-15.  Further, HPN asserted in its Second Affirmative Defense that it is "entitled to a set-off and/or recoupment to the extent Plaintiff received any overpayment or payment in error, including, but not limited to, payments for services not rendered, and/or for services improperly billed, and/or for services for which HPN was under no obligation to pay."  Answer at 3.  As such, the current operative pleadings will require interpretation of the contract provisions, evidence of what services the Hospital provided, evidence of how much HPN paid the Hospital, determination of whether that payment was the correct amount, and which party, if either, is entitled to further recovery.[2]

---

[2] For the same reason, the Court cannot credit the Hospital's assertion that HPN only seeks to file the counterclaims in order to force the Hospital to disclose confidential pricing information. See Opp'n at 8.  The cost basis the Hospital uses in determining what to charge HPN is as material to the existing Answer and affirmative defenses as it is to the proposed counterclaims.  The Court makes no determination at this time about whether the Hospital must ultimately disclose such information.

5

1   Although the proposed counterclaims include breach of LoA 2, which
2   is not included in the Complaint, the Hospital has already
3   admitted that its interpretation of the material terms in LoA 1 is
4   the same as its interpretation of LoA 2, so the legal issues will
5   not expand.  See Opp'n at 3.  The facts relevant to the dispute
6   over LoA 2 were already included in discovery, as the Hospital is
7   using HPN's behavior under LoA 2 in support of its interpretation
8   of LoA 1.  See Opp'n at 3, 6-7.  Thus, the Court finds that the
9   Hospital will endure little, if any, prejudice if HPN amends its
10  pleading and asserts new counterclaims.

11      The Hospital also argues that the timing of HPN's Motion
12  proves that HPN is acting in bad faith to avoid a summary judgment
13  motion.  See Opp'n at 6-7.  No such motion has been filed or
14  noticed.  The only authority the Hospital cites supporting its
15  position is Union Pacific Railroad Co. v. Coast Packing Co., 236
16  F. Supp. 2d 1130 (C.D. Cal. 2002).  That case is distinguishable.
17  First, in Union Pacific, discovery was already complete at the
18  time of the proposed amendment.  Id. at 1133.  Second, a summary
19  judgment motion was pending at the time the amendment issue arose.
20  Id.  Third, the amending party in that case did not seek the
21  court's leave, but rather asserted new facts in its brief opposing
22  summary judgment, which the court considered an attempt to amend.
23  See id.  None of these facts is present here, and the Hospital has
24  not identified any other reason to conclude that HPN is acting in
25  bad faith.

26      Additionally, the Hospital argues that HPN's Motion is
27  untimely because HPN knew, or should have known, the facts

28                                    6

**United States District Court**
For the Northern District of California

underlying the new counterclaims at the time it filed its Answer. See Opp'n at 4-5. When "evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006) (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1388 (9th Cir. 1990)). The Hospital asserts that HPN was in possession of all of the documents supporting the counterclaims at the time it filed the Answer. Opp'n at 5. HPN claims it did not have one of the critical documents – a letter dated January 25, 2008 – until May 22, 2008. Reply at 3 n.2; see also Milone Decl. Ex. C. Given that HPN filed its Answer on December 5, 2007, it could not possibly have known the contents of a January 25, 2008, letter at that time. The document in question is a letter from the Hospital to HPN, so HPN was likely aware of its contents at some point prior to when the letter was produced in May. However, HPN claims that it deferred moving to amend because the parties were participating in a Court-mandated mediation, and amendment would be unnecessary if the parties reached a settlement. Reply at 3 n.2. Under these circumstances, where the parties have conducted very little discovery, and where the moving party has a credible reason for not moving to amend earlier, the Court cannot find undue delay.

Finally, the Hospital claims that the amendment would be futile. See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied if it appears to be futile or legally insufficient."). According to the

7

Hospital, the letter agreements between the parties, as well as other documents, "demonstrate that the parties had a mutual agreement regarding the expectation of payment under the letters of agreement, and evidence of HPN's past practice in connection with other letters of agreement show that they were paid in accordance with Children's Hospital's interpretation." Opp'n at 10 (citing Aberman Decl. Exs. 3, 4).[3] Clearly, the letters themselves do not demonstrate a mutual understanding that "one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate" amounted to a 55% discount off of the Hospital's maximum billing, as the Hospital claims. See Milone Decl. Exs A, B. The third document the Hospital relies on is the cover sheet to a fax from the Hospital to HPN, with the following note:

> [A]ttached is the most recent Hospital Interim Rate Report published by the State of California to document the "maximum allowable reimbursement" for providers based upon the latest Medi-Cal cost reports filed by the Hospitals. This is the basis that we utilize for payment expectations with out-of-state Medicaid plans and out-of-state Medicaid managed care plans. Please call if you [sic] questions.

Aberman Decl. Ex. 3. The Hospital did not include the remainder of the fax in its submission to the Court. See id. This document shows, at most, that the Hospital once faxed some information to HPN that may be relevant here. It does not show what that

---

[3] Karlene J. Rogers-Aberman, counsel for the Hospital, submitted a declaration in support of the Hospital's Opposition. Docket No. 30.

8

information was, or give any indication that the parties had agreed to the 45% discount rate, as the Hospital asserts. Exhibit 4 contains three additional letters of agreement between the parties. Each of these agreements contains different payment terms. See id. Ex. 4 at HPN0060, HPN0062, HPN0064. Each letter's payment provision differs from the next, all three differ from the agreements at the core of this dispute, and none contains an agreement to the terms the Hospital asserts both parties understood. See id.; Milone Decl. Exs. A, B. The Court fails to see how these documents prove that the proposed counterclaims are futile or legally insufficient. Of the three letters, only one contains a provision even remotely similar to those at issue here:

> For medically necessary covered services provided by PROVIDER, COMPANY shall reimburse provider, less any applicable copayment, coinsurance and/or deductibles, fifty percent (50%) of PROVIDER's billed charges, which equals to reimbursement at 100% of Nevada Medicaid Fee Schedule.

Aberman Decl. Ex. 4 at HPN0064. Unlike the letters in this suit, however, this agreement made its prices contingent on Nevada's Medicaid fees rather than California's. The Hospital provides no supplementary documentation comparing California and Nevada rates, making it impossible to determine the relevance of this provision to the issue at bar. The Court therefore finds that the evidence offered by the Hospital does not render the proposed amendment futile.

### V. CONCLUSION

For all of the foregoing reasons, the Court concludes that

9

1  under the liberal guidelines of Rule 15(a) and Rule 13(f), HPN
2  should be allowed to assert its counterclaims.  The Court
3  therefore GRANTS HPN's motion.  HPN shall file the proposed
4  Amended Answer and Counterclaim no later than 10 days from the
5  date of this Order.

7       IT IS SO ORDERED.

9       August 28, 2008

11                                      UNITED STATES DISTRICT JUDGE