United States District Court
For the Northern District of California

1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6                                    )
                                     )
7    CHILDREN'S HOSPITAL AND RESEARCH )    No. 07-6069 SC
     CENTER AT OAKLAND,              )
8                                    )
              Plaintiff,             )    ORDER DENYING
9                                    )    DEFENDANT'S MOTION
         v.                          )    FOR PARTIAL SUMMARY
10                                   )    JUDGMENT
     HEALTH PLAN OF NEVADA, INC.; and )
11   DOES 1 THROUGH 25, INCLUSIVE,   )
                                     )
12            Defendants.            )
                                     )
13   _____ )

14

15   I.    **INTRODUCTION**

16         The Children's Hospital and Research Center at Oakland ("the

17   Hospital") brought this suit in the Alameda County Superior Court

18   in October 2007, alleging that Defendant Health Plan of Nevada

19   ("HPN") failed to pay the contractually required sum for medical

20   services provided to one of HPN's members.  See Notice of Removal,

21   Docket No. 1, Ex. A ("Compl.").  The Hospital is a California

22   corporation and HPN is a Nevada corporation.  HPN invoked the

23   Court's diversity jurisdiction and removed the action from the

24   Superior Court on November 5, 2007.  See Notice of Removal.  HPN

25   then filed its Answer on December 5, 2007.  See Docket No. 3.

26   With leave of the Court, see Docket No. 34, HPN filed an Amended

27   Answer and Counterclaim ("Counterclaim"), asserting that it

28   overpaid for medical services the Hospital provided to two of

HPN's members and that it is entitled to recover the excess payments.  Docket No. 35.

Before the Court is HPN's Motion for Partial Summary Judgment ("Motion").  Docket No. 47.  In its Motion, HPN seeks judgment on both claims in the Hospital's Complaint, as well as judgment on the issue of liability in the Counterclaim.  See id.  The Hospital filed an Opposition to the Motion and HPN filed a Reply.  Docket Nos. 56, 61.  Having considered the parties' arguments in full, the Court hereby DENIES HPN's Motion.

## II.  **BACKGROUND**

Beginning in May 2006, the Hospital rendered medical care to a patient ("Patient A") who was enrolled in HPN's Medicaid Managed Care Program.  See Schoener Decl. ¶ 6.[1]  Pursuant to a Letter of Agreement between the parties, HPN was to pay the Hospital as follows:

> For Medically Necessary Covered Services rendered by PROVIDER in association with the above reference number, COMPANY shall reimburse PROVIDER one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate less applicable copayments, coinsurance, and/or deductibles.

Id. Ex. A ("LoA 1").  At about the same time, the Hospital provided care to another HPN member ("Patient B"), under nearly identical terms in a second Letter of Agreement:

> For Medically Necessary Covered Services rendered by PROVIDER, COMPANY shall reimburse

---

[1] Shaun Schoener, Manager of Network Development and Contracts at HPN, submitted a declaration in support of the Motion.  Motion Ex. 1.

United States District Court
For the Northern District of California

1                    PROVIDER one-hundred percent (100%) of the
                     California Medi-Cal Contracted Maximum
2                    Allowable Reimbursement rate less applicable
                     copayments, coinsurance, and/or deductibles.
3

4    Id. ¶ 7, Ex. B ("LoA 2").

5         The Hospital billed HPN approximately $2,008,550.40 for

6    services provided to Patient A between her admission and her death

7    on September 1, 2006.  Spaeth Decl. ¶¶ 2, 3.[2]  The Hospital

8    refused to provide HPN with the California Medi-Cal Contracted

9    Maximum Allowable Reimbursement applicable to the services

10   rendered to Patient A.  Id. ¶ 4.  In October 2006, HPN paid the

11   Hospital $341,325.00 of the billed amount, based on a per diem

12   rate of $2,775.00 for the 123 days Patient A was admitted to the

13   Hospital.  Id. ¶¶ 5, 6.

14        The Hospital billed HPN $101,832.53 for services provided to

15   Patient B between May 17 and May 22, 2006.  Id. ¶¶ 7, 8.  As with

16   Patient A, the Hospital has refused to provide HPN with the

17   applicable California Medi-Cal Contracted Maximum Allowable Rate

18   for the services rendered to Patient B.  Id. ¶ 9.  In July 2006,

19   HPN paid the Hospital $37,510.09 of the amount billed for services

20   provided to Patient B.  Id. ¶ 10.  HPN paid based on the rate set

21   forth in the State of California Department of Health Services

22   Quarterly Hospital Interim Rate Report, 45% of the total amount

23   billed.  See id. ¶ 11, Ex. A at HPN022.

24   ///

25   ///

26   _____

27        [2] Corrine Spaeth, the Director of Claims at HPN, submitted a
     declaration in support of the Motion.  Motion Ex. 2.

28                                    3

**United States District Court**
For the Northern District of California

## III. **LEGAL STANDARD**

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, entry of summary judgment in a party's favor is appropriate when there are no material issues of fact as to the essential elements of the party's claim. Anderson, 477 U.S. at 247-49.

## IV. **DISCUSSION**

The question before the Court in the instant Motion is a narrow one. The Hospital asserts that the provision in the two letter agreements which requires HPN to pay "one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate" means that HPN was to pay the Hospital 45% of the amount billed, also known as the "interim rate." HPN contends that disputed phrase refers to a pre-set per diem amount that is much lower than the interim rate and is not tied to the amount

4

billed.  At this stage, the Court must only decide if HPN's interpretation of the contract is correct as a matter of law.

The first step is a determination of whether the contract is ambiguous.  HPN argues that the contract language is not ambiguous on its face, and that the Court's inquiry should end there, because parol evidence is only admissible if a contract is ambiguous.  See e.g., Consol. World Invs., Inc. v. Lido Preferred, Ltd., 11 Cal. Rptr. 2d 524, 526-27 (1992) ("One exception to the parol evidence rule is that extrinsic evidence may be introduced to explain the meaning of ambiguous contractual language.").  The Court agrees with HPN to an extent.  The phrase in dispute is "one-hundred percent (100%) of the California Medi-Cal Contracted Maximum Allowable Reimbursement rate."  Considering the ordinary meaning of the words in this phrase, it appears that there is an established maximum rate for Medi-Cal contracts in the State of California, and that the parties agreed HPN would pay the Hospital this rate for services provided to Patient A and Patient B.  See Cal. Civ. Code 1644 ("The words of a contract are to be understood in their ordinary and popular sense"); LoA 1; LoA 2.[3]

However, under California law, parties may introduce evidence to prove a latent ambiguity in the terms of a contract.  "The test of admissibility of extrinsic evidence to explain the meaning of a

---

[3] HPN moves for summary judgment on the issue of liability, to be followed by an evidentiary hearing on the issue of damages.  At most, however, the Court could adopt HPN's interpretation of the agreement.  As neither party submitted evidence about what the California Medi-Cal Contracted Maximum rate is, it would still be impossible to determine the correct amount due under either LoA, and therefore impossible to determine which party, if either, is entitled to recover.

United States District Court
For the Northern District of California

written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 442 P.2d 641, 644 (Cal. 1968). The Hospital seeks to introduce a variety of evidence supporting its contention that the disputed phrase refers to the interim rate. Before considering the evidence, the Court must evaluate whether the Hospital's proposed interpretation is reasonable. As noted above, the interim rate for the Hospital is 45% of the billed charges. See Spaeth Decl. Ex. A at HPN0022. The Court concludes that the disputed phrase could reasonably refer to the interim rate. Nothing in the language of the contract gives any indication what the "California Medi-Cal Contracted Maximum Allowable Reimbursement rate" actually is. Moreover, without referring to extrinsic evidence itself, HPN is unable to provide a reason why the disputed phrase could not plausibly refer to the interim rate.

Given that the contract language is reasonably susceptible to the interpretation the Hospital advances, the Court concludes that the contracts are ambiguous. The Court therefore looks to parol evidence. The Hospital relies on two forms of evidence. First, when HPN paid for the services rendered to Patient A and Patient B, it paid different rates, despite LoA 1 and LoA 2 having the same payment provision. See Lovich Decl. Ex. 1 (Spaeth Deposition

6

**United States District Court**
For the Northern District of California

Excerpts) at 13:16-14:13, 16:13-17:21.[4]   Thus, HPN's own conduct

suggests that its proposed interpretation may not be correct,

particularly given that HPN actually paid the interim rate for one

of the two contracts, supporting the interpretation advanced by

the Hospital.  See id. at 16:13-17:21.  According to HPN, it paid

the differing rates because the Hospital refused to provide the

contracted maximum rate information.  See Reply at 6-7, Ex. 1

(Spaeth Deposition Excerpts) at 17:10-21, 18:8-15.  HPN does not

deny that it paid different rates on the two contracts, but the

testimony it offers to explain the difference is not sufficient to

determine that its proposed interpretation of the contract

language is correct as a matter of law.  This factual issue is

sufficient basis for the Court to deny summary judgment.

The Hospital also directs the Court's attention to a fax it

sent to HPN regarding billing rates.  According to that fax, the

interim rate is the "basis that [the Hospital] utilize[s] for

payment expectations with out-of-state Medicaid plans and out-of-

state Medicated managed care plans."  Lovich Decl. Ex. 2.  HPN

argues that the Hospital's expectations are not material, and that

the faxed document refers to the rates paid in the absence of a

contract, which should not be applicable under LoA 1 or LoA 2.

This is a further factual dispute, making summary judgment

inappropriate.

///

--------

[4] Richard A. Lovich, counsel for the Hospital, filed a
declaration in support of the Hospital's Opposition.  Docket No.
57.

**V.    CONCLUSION**

The Court has identified a number of material issues of fact that remain in dispute.  The appropriate course is to proceed with trial to resolve these issues.  The Court therefore DENIES HPN's Motion for Partial Summary Judgment.[5]

The April 6, 2009, trial date is hereby VACATED.  The trial is reset for Monday, April 20, 2009, at 9:30 a.m. in Courtroom 1.


IT IS SO ORDERED.


March 23, 2009

_____

UNITED STATES DISTRICT JUDGE

---

[5] The Court has neither accepted nor rejected HPN's interpretation of the contract language.  Magistrate Judge Chen previously issued an order requiring the Hospital to respond to certain of HPN's discovery requests unless the Court rejected HPN's interpretation.  See Docket No. 67 at 2.  If the Hospital has not yet responded to the interrogatories in question, it must do so.

United States District Court
For the Northern District of California